# Exhibit 2

| | |
|---|---|
| **STATE OF MINNESOTA** | **DISTRICT COURT** |
| **COUNTY OF HENNEPIN** | **FOURTH JUDICIAL DISTRICT** |

| | |
|---|---|
| Scott D. Link, | Case Type: Employment |
| Plaintiff, | Court File No. 27-CV-20-6781 |
| vs. | (Judge Susan M. Robiner) |
| Disciplined Growth Investors, Inc., Frederick Martin, Rick Martin, Robert Buss, and Robin Nicoski, | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STAY ARBITRATION** |
| Defendants. | |

## INTRODUCTION

Defendants Disciplined Growth Investors, Inc. ("DGI"), Frederick Martin, Rick Martin, Robert Buss, and Robin Nicoski (collectively, "Defendants") respectfully submit this memorandum in opposition to Plaintiff Scott D. Link's ("Plaintiff") Motion to Stay Arbitration.

The Court should deny Plaintiff's Motion because the Court does not have the power to stay the pending arbitration between the parties. The Federal Arbitration Act governs the parties' arbitration agreement. The Federal Arbitration Act does not provide courts with the authority to stay arbitrations where the parties do not dispute arbitrability (and even then, the court's power is limited). Here, there is no dispute about arbitrability as demonstrated by the fact that *Plaintiff* commenced the arbitration at issue. Accordingly, the Court has no authority to stay the pending arbitration. Further, even if Plaintiff's misguided argument that the Minnesota Uniform Arbitration Act governs the parties' arbitration agreement were accurate, the Court still would not have authority to stay the parties' pending arbitration. Accordingly, the Court should deny Plaintiff's Motion.

DMNORTH #7420016 v1

## BACKGROUND[1]

Plaintiff initiated this employment lawsuit on May 7, 2020 alleging: (a) marital status and familial status discrimination arising from treatment allegedly received following his 2012 divorce; (b) disability discrimination based on a leave of absence that commenced October 7, 2019 and continued through April, 2020; and (c) retaliation. Although not required to do so, DGI paid Plaintiff in excess of $1.9 million dollars during his seven-month absence from work. Plaintiff then returned to work, and resigned shortly thereafter on June 15, 2020.

Plaintiff's discrimination case deteriorated rapidly as DGI shared damaging evidence with Plaintiff and his counsel regarding Plaintiff's job performance, including the following:  the stocks managed by Plaintiff lost $56 million while those managed by his peer, Defendant Nicoski, gained $274 million during the three years from 2017 through the first quarter of 2020; the return on stocks managed by Plaintiff was 42 percentage points less than the return on stocks managed by Defendant Nicoski from 2016 – 2019; and Plaintiff violated the parties' Amended and Restated Shareholder Agreement (the "Shareholder Agreement") by sharing with his sister and former girlfriend highly confidential information, including confidential client information. (*See* Declaration of Ricki Martin ("Martin Decl."), ¶ 14-16.)  Plaintiff's DGI-issued equipment was used to access highly inappropriate sexual websites, and send a client a sexually explicit photograph.  (*Id.*, ¶ 8-12.)  Plaintiff resigned as DGI began to learn of this information.

---

[1] Plaintiff's memorandum in support of his Motion contains over ten pages of factual background, in addition to an almost four-page introduction.  By contrast, Plaintiff dedicates less than two pages to his legal argument regarding the authority of the Court to stay the pending arbitration, which is obviously the lynchpin to his entire Motion.  Plaintiff's intent was obviously to persuade the Court with his slanted, overstated version of the facts.  Defendants will not burden the Court with a full retort of Plaintiff's "background," given that most of Plaintiff's claims lack any relevance to the pending Motion.  Defendants deny Plaintiff's entire background, and will respond at the appropriate time such as on summary judgment or at trial.

When DGI discovered the extent of Plaintiff's violations of the Shareholder Agreement, it exercised its contractual right under the Shareholder Agreement to repurchase Plaintiff's shares for $.01 per share. The parties agree that shareholder agreements dating back to 2004, signed by Plaintiff, specifically grant DGI this right. Plaintiff claims the applicable repurchase provision is not enforceable and DGI should not have exercised this right.

Accordingly, on September 3, 2020, Plaintiff filed a Demand for Arbitration with the American Arbitration Association ("AAA") challenging the repurchase provision and Defendant DGI's exercise of it. Plaintiff acknowledges in both his original Demand for Arbitration and his Amended Arbitration Demand that the proper venue for his contract dispute is American Arbitration Association ("AAA") arbitration: "The [AAA] has jurisdiction to hear the claims and demands asserted by Mr. Link in this arbitration pursuant to Section 9.1 of the Shareholder Agreement." (*See* Ex. 15 attached to the Declaration of Jaime Stilson ("Stilson Decl.") filed confidentially in connection with Plaintiff's Motion). Article 9 of the Shareholder Agreement provides the following pertinent provisions regarding arbitration:

ARTICLE 9
DISPUTE RESOLUTION

9.1     Scope. Any and all claims, counterclaims, disputes and other matters in question arising out of or relating to this Agreement or the breach hereof (a "Dispute") will be decided by arbitration in Minneapolis, Minnesota in accordance with the Commercial Arbitration Rules (the "Arbitration Rules") of the American Arbitration Association (the "AAA") then in effect, subject to the modifications set forth in this Section. Notice of claim and demand for arbitration must be delivered in writing together to the parties to the Dispute and the American Arbitration Association. No demand for arbitration may be made after the date when institution of legal or equitable proceedings based on such Dispute would be barred by the applicable statute of limitation.

9.2     Arbitrator.     The arbitration will be held before one arbitrator who is knowledgeable both (i) in the general subject matter of the Dispute and (ii) in matters involving "investment advisers" registered under the Investment Advisers Act of 1940, and selected by AAA in accordance with the Arbitration

27-CV-20-6781

Filed in District Court
State of Minnesota
12/4/2020 11:47 AM

Rules, except that any Dispute in which the claimed amount (as reflected on the demand for arbitration, as the same may be amended) exceeds $10,000,000 will be heard before three such arbitrators. The arbitrator will have the authority to determine the arbitrability of any Dispute. The arbitration will be scheduled to commence within 60 days of appointment of the arbitrator and will be concluded as promptly as possible. The arbitrator will be entitled to limit the evidence presented if he or she deems such limitation necessary to conclude the arbitration in a timely manner.

*    *    *

9.4    Choice of Law. The arbitrator will apply the substantive law of the State of Minnesota, without reference to the law of conflicts of Minnesota or any other jurisdiction, except that the interpretation and enforcement of this Section will be governed by the Federal Arbitration Act.

(*Id.*)

Having initiated arbitration, Plaintiff now asks this Court, rather than the arbitration panel, to stay the arbitration.  Plaintiff argues that he will be prejudiced unless the arbitration he initiated is stayed by this Court.

## ARGUMENT

### I.    THE COURT DOES NOT HAVE THE POWER TO STAY THE ARBITRATION.

Plaintiff argues that this Court should stay the pending arbitration between the parties. Plaintiff's argument fails.  In support of his argument, Plaintiff badly misquotes the parties' arbitration agreement, ignores clear Minnesota law, inaccurately cites to the Minnesota Arbitration Act, and relies on a U.S. Supreme Court case that is factually and legally inapposite. In short, this Court does not have authority to stay the pending arbitration between the parties, and Plaintiff has not offered a rational basis to suggest otherwise.

Plaintiff initially asserts that the Minnesota Uniform Arbitration Act applies because "the Shareholder Agreement's choice of law provision designates Minnesota law as controlling, 'without reference to the law of conflicts of Minnesota or any other jurisdiction.'"  (Plaintiff's

Filed in District Court
State of Minnesota
12/4/2020 11:47 AM

Mem., p. 16.)  That is not what the Shareholder Agreement provides.  The Shareholder

Agreement at Article 9 (which governs "Dispute Resolution") provides:

> 9.4    Choice of Law. The arbitrator will apply the substantive law of the State of Minnesota, without reference to the law of conflicts of Minnesota or any other jurisdiction, except that the interpretation and enforcement of this Section will be governed by the Federal Arbitration Act.

These terms are plain and unambiguous: the *arbitrator* applies the substantive law of Minnesota

to the parties' dispute, but the *Federal Arbitration Act* ("FAA") controls any issues regarding the

arbitrability and enforcement.  Plaintiff's mischaracterization of the Shareholder Agreement's

terms is completely inaccurate.

When an agreement contains both a choice-of-law provision and references the FAA, the

FAA governs the arbitrability of disputes, and Minnesota law governs the remaining issues.

*Manson v. Dain Bosworth*, 623 N.W.2d 610, 614 (Minn. Ct. App. 1998).  Accordingly, Plaintiff

has no rational basis to claim that the Minnesota Uniform Arbitration Act applies to this dispute

or gives the Court power to stay the pending arbitration.

There is no provision in the FAA that provides a court with authority to stay a parties'

pending arbitration where there is no dispute regarding arbitrability.  To be clear, there is no

dispute here the parties agreed to arbitrate the claims in the pending arbitration because *Plaintiff*

commenced that arbitration.  The U.S. Supreme Court has held that courts do not have authority

to stay arbitrations under these circumstances. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213,

217 (1985) (compelling arbitration and refusing to grant a stay, noting "the [FAA] requires

district courts to compel arbitration of pendent arbitrable claims, even where the result would be

the possibly inefficient maintenance of separate proceedings in different forums"); *accord*

*Lunsford v. RBC Dain Rauscher CS, 2006 U.S. Dist. LEXIS 74147*, at * 25-26 (D. Minn. Aug.

18, 2006) (recognizing the court has "no discretion" to stay arbitration pending litigation in

Court of non-arbitrable section 1985 claims); *United States ex rel. Kraemer v. United Dairies L.L.P.,* 2018 U.S. Dist. LEXIS 112305 (D. Minn. July 6, 2018) (concluding that the court lacks independent authority to stay the pending arbitration proceeding even when the ongoing arbitration and an ongoing lawsuit included the same parties); *Danny's Constr. Co. v. Birdair, Inc.,* 136 F. Supp. 2d 134 (W.D.N.Y 2000) ("Even if a party is facing the possibility of conflicting judgments, the district court would not have the authority to stay arbitration").

Accordingly, under the FAA, the Court does not have the power to stay the pending arbitration between the parties, and Plaintiff's motion must be denied. The Court need go no further in its analysis. Remarkably, however, even if the Court were to mistakenly apply Minnesota law as Plaintiff's argues, the result would still be the same. The Court still would not have authority to stay the parties' pending arbitration.

In support of his argument that the Court has authority to stay a pending arbitration under Minnesota law, Plaintiff mistakenly cites section 572B.07(b) of the Minnesota Uniform Arbitration Act, which provides:

> On motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue. If the court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate. If the court finds that there is no enforceable agreement, it may not order the parties to arbitrate.

Section 572B.07(b) does not provide a court with authority to stay an arbitration. In fact, section 572B.07(b) does not use the term "stay" at all. Other parts of section 572B.07 do use the term "stay," but only as to a Court's authority to stay pending *court proceeding*s, not arbitrations. *See* Minn. Stat. § 572B.07(e) and (f). This clearly demonstrates that the Legislature was aware of a court's power to stay actions, and specifically limited that power to court actions rather than arbitrations. *See Staab v. Diocese of St. Cloud,* 853 N.W.2d 713, 718-719 (Minn. 2014)

(applying the cannon of statutory construction known as *expression unius est exclusio alterius* – "the expression of one thing is the exclusion of another"); *Reider v. Anoka-Hennepin Sch. Dist. No. 11*, 728 N.W.2d 246, 250 (Minn. 2007) (rejecting party's construction of statute because it would "add terms that the legislature has omitted").

Plaintiff also relies on *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior University,* 489 U.S. 468 (1989). Plaintiff's reliance on *Volt* is problematic for many reasons. First, *Volt* is factually distinguishable. The Court's ruling in *Volt* that the court had authority to stay a pending arbitration was based on *California's* arbitration statute, which contained a specific provision permitting a court to stay arbitration pending resolution of related litigation between a party to the arbitration agreement and third parties not bound by it, where "there is a possibility of conflicting rulings on a common issue of law or fact." *Id.* at 471.[2] Here, the Minnesota Uniform Arbitration Act does not contain any provision similar to the California statute at issue in *Volt*. Further, there is no litigation pending with third parties that could create conflicting rulings. Accordingly, *Volt* is factually inapposite.

Further, Plaintiff ignores that the U.S. Supreme Court significantly limited *Volt* by its later holding in *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52 (1995). *See Preston v. Ferrer*, 552 U.S. 346, 362 (2008) (refusing to follow *Volt* in light of the Court's subsequent

---

[2] The statute provided that when a court determines that "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact[,]…the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." *Id.* at 471, fn 3 (quoting Cal. Civ. Proc. Code Ann. § 1281.2(c) (West 2007)).

decision in *Mastrobuono*).  In *Mastrobuono*, the U.S. Supreme Court addressed the circumstances – as present here – where a contract contained both a choice-of-law clause and a clause providing for arbitration in accordance with specific arbitration rules. 514 U.S. at 58-59. The Court held that the "best way to harmonize" the two clauses was to read the choice-of-law clause "to encompass substantive principles that [state] courts would apply, but not to include [a state's] special rules limiting the authority of arbitrators." *Id.* at 63-64 (explaining, "Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration").  Accordingly, even if Minnesota law contained a special rule giving courts the power to stay arbitrations (which it does not), under *Mastrobuono*, the Court would not apply that rule and would instead defer to the rules governing the parties' arbitration.  Here, the rules that govern the parties' arbitration – the AAA's Commercial Rules for Arbitration and Mediation – clearly provide the *arbitrator* with authority to control the arbitration proceedings and determine jurisdiction.  *See, e.g.* AAA Commercial Rules and Mediation Procedures, R-30.

In sum, the Court does not have the power to stay the arbitration pending between the parties, and Plaintiff's motion must be denied.

## II. EVEN IF THE COURT HAD THE POWER TO STAY THE ARBITRATION, IT SHOULD NOT DO SO BECAUSE IT WOULD DENY THE PARTIES THE BENEFIT OF THEIR BARGAIN.

Even if the Court had the power to stay the arbitration between the parties, it should not exercise that power.  The FAA's primary purpose is to ensure that agreements to arbitrate are enforced according to their terms and that parties are free to structure their arbitration agreements as they wish. *See Mastrobuono*, 514 U.S. at 57; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) (recognizing that parties may limit by

Filed in District Court
State of Minnesota
12/4/2020 11:47 AM

contract the issues which they will arbitrate, and may specify by contract the rules under which that arbitration will be conducted).

Here, the parties specifically agreed to arbitrate all claims "arising out of or relating to" the Shareholder Agreement, and that the "arbitration will be scheduled to commence within 60 days of the appointment of the arbitrator and will be concluded as promptly as possible." This is the clear bargain the parties struck, and the manner they chose to resolve any disputes concerning the Shareholder Agreement. The parties desired a prompt resolution of disputes arising under the Shareholder Agreement. If the Court were to stay the arbitration, the Court would deny enforcement of the clear and unambiguous terms of the parties' agreement. This would be inconsistent with the entire purpose of the FAA, and with the more general freedom of parties to contract. Accordingly, even if the Court had the power to stay the arbitration, it should not do so.[3]

## **CONCLUSION**

For these reasons and all others, Defendants respectfully request that the Court deny Plaintiff's Motion to Stay Arbitration.

---

[3] It would be particularly unfair for the Court to stay the arbitration where, as here, *Plaintiff* is the party who commenced the arbitration. This is clearly a situation where Plaintiff "wants to have his cake and eat it too," in that Plaintiff wants to pursue claims relating to the Shareholder Agreement, but only on his terms – even if those terms are contrary to the bargain he previously struck with Defendants.

Filed in District Court
State of Minnesota
12/4/2020 11:47 AM

Dated:  December 4, 2020          **BALLARD SPAHR LLP**


By:  /s/ Mary M. O'Brien
     Mary M. O'Brien (MN#0177404)
     obrienm@ballardspahr.com
80 South Eighth Street
2000 IDS Center
Minneapolis, MN  55402-2119
Telephone:  (612) 371-3211

*ATTORNEYS FOR DEFENDANTS*