Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Charles H. Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Pavithra Rajesh (SBN 323055)
  *prajesh@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Movant Scott Link and*
*Proposed Lead Counsel for the Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| RAVI KRISHNAMOORTHY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEMLER SCIENTIFIC, INC., DOUGLAS MURPHY-CHUTORIAN, ANDREW B. WEINSTEIN, and RENAE CORMIER,<br><br>Defendants. | Case No. 5:25-cv-07303-PCP<br><br>**SCOTT LINK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**<br><br>Date: December 4, 2025<br>Time: 10:00 a.m.<br>Crtrm.: 8 – 4th Floor<br>Judge: P. Casey Pitts |

SCOTT LINK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
Case No. 5:25-cv-07303-PCP

Link[1] submits this reply memorandum of law in further support of his motion for appointment as lead plaintiff and approval of lead counsel (Dkt. No. 18), and in response to the opposition to his motion filed by Woodbury (Dkt. No. 26, the "Woodbury Opp."). The only other lead plaintiff movant (Sytina) has effectively abandoned her motion. *See* Dkt. No. 25. Link should be appointed as lead plaintiff because he has the largest financial interest in the relief sought by the class, and Woodbury has failed to prove that Link is inadequate.

## I.    Link Is The Presumptively Most Adequate Plaintiff To Be Appointed As Lead Plaintiff Because He Has The Largest Financial Interest

As illustrated in Link's opposition memorandum, and provided again in the chart below, Link has the largest financial interest as measured by three of the four factors courts consider:

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | LIFO Loss |
|---|---|---|---|---|
| Link | **18,000** | **18,000** | **$1,034,362** | $372,211 |
| Woodbury | 12,500 | 12,500 | $910,125 | $450,298 |
| Sytina | 6,800 | 6,800 | $451,400 | $201,254 |

Moreover, the net shares purchased factor is particularly indicative of financial interest in this case because Link and Woodbury purchased all their shares before the two alleged corrective disclosures and retained their shares through both disclosures. *See* Dkt. No. 1 at ¶¶ 30-34 (Complaint, alleging corrective disclosures on February 28, 2025 and April 15, 2025); Dkt. No. 19-3 (Link's purchases were all between November 15, 2021 and May 9, 2022); Dkt No. 15-3 (Woodbury's purchases were all allegedly on November 21, 2024). In short, Link holds 18,000 shares damaged by the corrective disclosures; Woodbury holds only 12,500. *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("[T]he candidate with the most net shares purchased will normally have the largest potential damage recovery."). The net shares factor may be less useful where there are multiple corrective disclosures. *See id.* (net shares "gets into trouble only if the amount of the 'fraud premium' varied over the course of the class

[1] All capitalized terms herein shall have the same meaning as in Link's opposition memorandum (Dkt. No. 28).

SCOTT LINK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
Case No. 5:25-cv-07303-PCP

1

period" since "some transactions resulted in greater losses than others and thus not all transactions were equal"). However, here, any change in the fraud premium between the two corrective disclosures is irrelevant since Link and Woodbury purchased their shares entirely before both disclosures and therefore at the same fraud premium. *See id.* ("It really does not matter what size premium is used, for all shares would have been inflated to the same extent.").

While Woodbury claims a larger loss than Link, there is still an open question as to whether Woodbury's transaction information is accurate. Link pointed out it is unlikely that Woodbury's purchase of 12,500 shares occurred in one transaction at a single price, as orders of that size are typically broken up into smaller transactions (like Link's). *See* Dkt. No. 28 at 5 ("[I]t appears the transaction information [Woodbury] submitted is incomplete."). In response, Woodbury argues that Link's observation is speculative and claims that "[c]ounsel has conferred with Mr. Woodbury and confirmed that he purchased 12,500 shares on November 21, 2024." *See* Dkt. No. 31 at 5-6. However, Link did not question whether Woodbury "purchased 12,500 shares on November 21, 2024," Link questioned whether they were purchased ***in one transaction at one price***. Woodbury's response does not directly address Link's question. Woodbury has offered to provide transaction documentation *in camera*. *See id.* at 6 n.1. Given that accurate transaction information is essential to determining which movant has the largest financial interest, the Court should take Woodbury up on his offer. However, even if the accuracy of Woodbury's transaction information is not cleared up, Link has the largest financial interest.

Since Link has a larger financial interest as measured by three of the four factors, including net shares, Link has the largest financial interest in the relief sought by the class. Indeed, Woodbury tacitly concedes this fact by attacking Link's adequacy to be a lead plaintiff. If Woodbury believed that he truly had the largest financial interest there would be no reason to attempt to rebut the presumption as to Link because the Court only considers lead plaintiff movants sequentially based on the largest financial interest. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest

financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23.").

## II. The Court Should Reject Woodbury's Belated Request To Consider Only The Movants' Losses To Determine Financial Interest

In his opposition memorandum, Woodbury argues for the first time that the Court should look exclusively to loss and ignore the first three *Lax* factors entirely. *See* Woodbury Opp. at 2. This is a transparent attempt to manufacture the largest financial interest. The Court should reject such gamesmanship.

Woodbury's belated request to ignore all of the *Lax* factors but loss contradicts his initial lead plaintiff motion in which Woodbury endorsed all four factors:

> To determine which movant has the largest financial interest, Courts in this Circuit typically apply the *Olsten-Lax* factors, which are: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class periods; and (4) the approximate losses suffered."

Dkt. No. 14 at 5 (citation omitted). Woodbury also highlighted in his financial interest analysis that he had 12,500 "Shares Retained" and expended "$910,125." *See* Dkt. No. 15-3. Link similarly presented his 18,000 retained shares and expenditure of $1,034,362 in his financial interest analysis. *See* Dkt. No. 19-3.

Only now that Woodbury can see that Link prevails under the first three factors does Woodbury abandon the four factor test. Courts routinely reject late petitions to change the financial interest analysis because it opens the process up to the type of gamesmanship Woodbury is employing here. *See Wai v. Marqeta, Inc.*, No. 4:24-cv-08874-YGR, Dkt. No. 38 at 6 (N.D. Cal. Mar. 11, 2025) (rejecting movant's belated argument that the court should ignore the *Lax-Olsten* factors, reasoning "while Dellock's original motion referenced his belief that were the Court to consider the four *Lax-Olsten* factors, he should prevail, Dellock is now silent as to the primacy of

SCOTT LINK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
Case No. 5:25-cv-07303-PCP

3

these factors");[2] *Twitchell v. Enovix Corp.*, 2023 WL 3170044, at \*9 (N.D. Cal. Apr. 28, 2023) ("Other courts in this district have looked with disapproval on movants who present different loss calculations in their subsequent briefing from what they presented in their motions.") (collecting cases).

*    *    *

Since Link has the largest financial interest, filed a timely motion, and made the required preliminary showing of his typicality and adequacy, Link is the presumptively most adequate plaintiff to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

## III.    Woodbury Has Not Rebutted The Presumption That Link Is The Most Adequate Plaintiff

The presumption that Link is the most adequate plaintiff may be rebutted only upon "proof" that Link "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Importantly, Woodbury must provide "proof" and speculative assertions are insufficient. *See Murdeshwar v. Searchmedia Holdings Ltd.*, 2010 WL 11556544, at \*1 (C.D. Cal. Dec. 15, 2010) (holding "mere speculation" was insufficient to rebut the most adequate plaintiff presumption); *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) ("Speculative assertions [are] insufficient to rebut the lead plaintiff presumption.").

Here, Woodbury attempts to rebut the presumption by arguing that Link should have disclosed that he was involved in litigation years ago with a previous employer, which has since settled. *See* Woodbury Opp. at 5-7. However, Woodbury does not cite any authority for the proposition that Link's previous litigation amounts to proof that he is inadequate. No doubt, counsel for Woodbury is aware that "[m]ost courts have rejected the contention that a proposed representative is inadequate because of prior unrelated unsavory, unethical or even illegal conduct." *See Chupa v. Armstrong Flooring, Inc.*, 2020 WL 1032420, at \*3-\*4 (C.D. Cal. Mar. 2, 2020) (appointing a lead plaintiff who was formerly convicted of armed bank robbery); *see also In*

---

[2] This opinion is not published. A copy is submitted herewith as Exhibit A to this reply.

*re: Facebook Priv. Litig.*, 2016 WL 4585817, at *6 (N.D. Cal. Sept. 2, 2016) (a "single felony embezzlement conviction" did not disqualify class representative); *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 950 (N.D. Ill. 2007) ("[w]hether Monsky was in fact sanctioned by [the National Association of Securities Dealers]" does not "bear[] upon . . . his qualifications to represent the class"). Given this, Woodbury raising the previous litigation seems more like an attempt to harass Link, rather than an attempt to raise an issue that legitimately bears on Link's adequacy. The Court should reject Woodbury's attack.

In particular here, Link was not charged with or convicted of any crime, nor publicly sanctioned. *See Labelle v. Future FinTech Grp., Inc.*, 2024 WL 4275226, at *5 (D.N.J. Sept. 24, 2024) (reviewing the caselaw and finding that disqualification typically requires "proof that the presumptive lead plaintiff" is "subject of an active criminal investigation," "had been previously convicted of [specific types of] crime," or "had been publicly sanctioned for violating laws that implicate the individual's moral character"). Woodbury does not even claim that the allegations regarding Link are related to the claims in this action. *See Gamboa v. KISS Nutraceuticals*, 2025 WL 1088066, at *9 (D. Colo. Apr. 2, 2025) (the conduct "must generally bear some relevance to the litigation, such as . . . inconsistent testimony on material issues in the litigation . . . .") (citation omitted); *Mejia v. DHL Express (USA), Inc.*, 2016 WL 9450680, at *10 (C.D. Cal. Feb. 25, 2016) (appointing a class representative whose prior bad acts were not "relevant to the conduct at issue in this case"). Without such a showing, Woodbury has failed to prove Link is inadequate.

While Woodbury highlights the allegation that Link previously suffered from a "mental impairment" that temporarily prevented him from working, *see* Woodbury Opp. at 6, Woodbury fails to mention that Link returned to work approximately seven months later in April 2020. *See* Dkt. No. 27-1 ¶ 3 ("Mr. Link returned from his medical leave at the end of April 2020"). Even if Link had an impairment, that would not render him inadequate. *See Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 161 (N.D. Cal. 2015) ("Nor are alleged cognitive impairments a valid reason to deem Plaintiffs inadequate."). Regardless, Link is not currently suffering from any impairment that would impact his ability to adequately represent the class.

---

SCOTT LINK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
Case No. 5:25-cv-07303-PCP

5

For these reasons, Woodbury has failed to prove that Link is inadequate on the basis of his previous employment litigation. Woodbury has therefore failed to rebut the presumption that Link is the most adequate plaintiff to be appointed as lead plaintiff.  Moreover, since Woodbury has failed to demonstrate a "reasonable basis" for a finding that Link is inadequate, Woodbury's request for discovery into Link should be denied. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv).

## IV. Conclusion

For the foregoing reasons, Link requests that the Court appoint him as lead plaintiff and approve his selection of Glancy Prongay & Murray LLP as lead counsel for the class.

DATED: November 19, 2025                Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:    */s/ Charles H. Linehan*
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  clinehan@glancylaw.com

*Counsel for Lead Plaintiff Movant Scott Link and Proposed Lead Counsel for the Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case and am over eighteen years old. On November 19, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 19, 2025, at Los Angeles, California.

*/s/ Charles H. Linehan*
Charles H. Linehan