IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


| KRISHNAMOORTHY, | ) | CV-25-7303-PCP |
|---|---|---|
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| VS. | ) | DECEMBER 4, 2025 |
| | ) | |
| SEMLER SCIENTIFIC, INC., ET AL | ) | PAGES 1 - 20 |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |
| _____ | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE P. CASEY PITTS
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

FOR THE PLAINTIFF:        GLANCY PRONGAY AND MURRAY, LLP
LINK                      1925 CENTURY PARK EAST, STE 2100
                          LOS ANGELES, CA 90067
                     BY:  **CHARLES HENRY LINEHAN**


FOR THE MOVANT:           THE ROSEN LAW FIRM, P.A.
WOODBURY                  275 MADISON AVENUE, 40TH FLOOR
                          NEW YORK, NY 10116
                     BY:  **PHILIP C. KIM**



APPEARANCES CONTINUED ON THE NEXT PAGE



OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                              CERTIFICATE NUMBER 13185


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

APPEARANCES CONTINUED:

FOR THE DEFENDANT:        FOR THE DEFENDANT: GOODWIN PROCTER LLP
                         525 MARKET STREET, 32ND FLOOR
                         SAN FRANCISCO, CA 94105
                    BY:  **JONATHAN SHAPIRO**


FOR THE DEFENDANT:       GOODWIN PROCTER, LLP
                         100 NORTHERN AVENUE
                         BOSTON, MA 02210
                    BY:  **JOHN A. BARKER**

SAN JOSE, CALIFORNIA                    DECEMBER 4, 2025

P R O C E E D I N G S

(COURT CONVENED AT 10:11 A.M.)

THE CLERK:  CALLING OUR FIRST MATTER THIS MORNING.
CASE 25-CV-7303. KRISHNAMOORTHY V. SCIENTIFIC, INC., ET AL.  ON
TODAY FOR THE MOTIONS TO APPOINT PLAINTIFF AND LEAD COUNSEL.

WILL THE PARTIES PLEASE APPROACH THE PODIUM AND STATE YOUR
APPEARANCES FOR THE RECORD.

MR. KIM:  GOOD MORNING, YOUR HONOR.

PHILLIP KIM, ROSEN LAW FIRM, FOR MOVANT SIDNEY WOODBURY.

THE COURT:  GOOD MORNING.

MR. LINEHAN:  GOOD MORNING, YOUR HONOR.

CHARLES LINEHAN FROM GLANCY PRONGAY & MURRAY, ON BEHALF OF
LEAD PLAINTIFF, SCOTT LINK.

THE COURT:  GOOD MORNING.

MR. SHAPIRO:  GOOD MORNING, YOUR HONOR.

APPEARING REMOTELY, AND THANK YOU FOR THAT, IT'S JONATHAN
SHAPIRO, GOODWIN PROCTER, AND MY PARTNER JOHN BARKER, WE ARE ON
FOR SEMLER SCIENTIFIC AND THE THREE INDIVIDUAL DEFENDANTS.

THE COURT:  GOOD MORNING.

AND I THINK THAT'S ALL THAT WE HAVE PARTICIPATING IN THIS
MORNING'S PROCEEDING.  SO WE ARE HERE ON THE MOTIONS TO APPOINT
LEAD PLAINTIFF AND LEAD COUNSEL.

AND AS I UNDERSTAND IT THE REAL DISPUTE IS WHICH OF THE
TWO LEAD PLAINTIFFS BEFORE ME HAS THE LARGEST FINANCIAL

INTEREST IN THIS PROCEEDING GIVEN THE RECORD THAT'S BEEN PROVIDED.

THERE'S ALSO BEEN SOME CHALLENGE, I THINK BY -- RAISED BY WOODBURY TO LINK'S SUFFICIENCY ON LEAD PLAINTIFF ON OTHER GROUNDS THAT I'M NOT SURE HAS BEEN ADEQUATELY ADDRESSED.

SO MAYBE DO YOU WANT TO START BY ADDRESSING THAT MATTER?

MR. LINEHAN:  YES.  I CAN ADDRESS THAT.

SO THIS WAS MY UNDERSTANDING FROM THE DOCKETS THAT WERE FILED AND FROM MR. LINK HIMSELF IS THAT THIS WAS AN EMPLOYMENT DISPUTE IN A COMPANY IN WHICH HE OWNED A SHARE AND HE HAD KIND OF SOME DISPUTE WITH THE OTHER OWNERS WHICH THEY WERE TRYING TO FORCE HIM OUT, AND IT WAS CONTENTIOUS BUT THAT THAT MATTER ULTIMATELY SETTLED.  SETTLEMENT IS CONFIDENTIAL, BUT THE CASE LAW ON THE ADEQUACY OF A LEAD PLAINTIFF MOVANT I THINK IS PRETTY CLEAR THAT THIS IS NOT THE TYPE OF THING THAT WOULD RENDER A LEAD PLAINTIFF MOVANT INADEQUATE.

USUALLY TO RENDER A LEAD PLAINTIFF INADEQUATE WOULD REQUIRE A CRIMINAL OR PUBLIC SANCTION FOR A CRIME OR OTHER ACTION INVOLVING DISHONEST SEE SUCH AS VIOLATIONS OF THE FEDERAL SECURITIES LAWS THEMSELVES OR OTHER CRIMES INVOLVING DECEPTION.

THE COURT:  WELL I THINK, I MEAN THE ISSUE THEY HAVE RAISED IS THAT THERE WAS A REPRESENTATION BY MR. LINK IN THAT PROCEEDING THAT HIS DEPARTURE FROM THE INVESTMENT FIRM WAS THE RESULT OF -- IT WAS CHARACTERIZED AS A MENTAL IMPAIRMENT.

SO THE QUESTION WOULD BE DOES THAT BEAR ON HIS ABILITY TO SERVE AS LEAD PLAINTIFF TO KEEP ACTIONS, PARTICIPATE IN THE CASE ACTIVELY, AND THAT SEEMS TO BE THE ISSUE AND I'M NOT SURE THAT WAS ACTUALLY ADDRESSED.

MR. LINEHAN:  SO IN THE COMPLAINT FILED BY MR. LINK AND I BELIEVE IN THE RESPONSE PROVIDED, FILED WITH THIS COURT BY COUNSEL FOR MR. WOODBURY, AND IN DISCUSSING THAT WITH LINK IN RESPONSE TO THAT ACCUSATION BY WOODBURY, MY UNDERSTANDING IS THAT WAS KIND OF AN ACUTE ISSUE BROUGHT ON BY THE FACT THAT THE STRESS BROUGHT ON BY THE FACT THAT HE WAS BASICALLY BEING FORCED OUT OF A COMPANY THAT HE HAD WORKED IN FOR DECADES AND PARTIALLY OWNED, AND IT WAS A BRIEF THING, I BELIEVE IT WENT FROM OCTOBER OF 2019 TO APRIL OF 2020 IN WHICH HE CAME BACK TO WORK, BUT THAT THERE'S NO LASTING OR ANY ISSUE WITH THAT CURRENTLY, JUST AN ACUTE ISSUE RELATED TO THE STRESSES OF THAT LITIGATION AND THE THINGS THAT WERE GOING ON AT THE TIME.

WE ARE MORE THAN FIVE YEARS REMOVED FROM THAT, HE'S INDICATED THERE IS NO ONGOING ISSUE THAT WOULD PREVENT HIM FROM ADEQUATELY REPRESENTING THE CLASS AND SO I BELIEVE THAT THAT'S NOT SOMETHING THAT WOULD RENDER HIM INADEQUATE AT THIS POINT.

THE COURT:  OKAY.  AND ON THE -- LET'S TURN TO THE QUESTION OF THE -- OF WHICH PARTY HAS THE LARGEST FINANCIAL INTEREST BECAUSE I WILL TAKE YOUR CHARACTERIZATIONS, AND I DON'T THINK THERE'S ANYTHING ELSE IN THE RECORD THAT WOULD SUGGEST THOSE CHARACTERIZATIONS OF WHERE HE IS RIGHT NOW ARE

INADEQUATE SO THAT REALLY THE ONLY ISSUE WE HAVE IS WHICH OF THE PARTIES HAS THE GREATEST FINANCIAL INTEREST, BECAUSE I THINK OTHERWISE THE PARTIES AREN'T CHALLENGING ADEQUACY AS TO EITHER THE LEAD PLAINTIFF OR THE COUNSEL THEY HAVE CHOSEN.

I JUST WANT TO MAKE SURE I UNDERSTAND THE FACTS CORRECTLY FROM WHAT'S BEEN SUBMITTED.  AM I RIGHT WHEN I LOOK AT THE CHARTS THAT HAVE BEEN PROVIDED THAT WHAT THEY INDICATE IS THAT BOTH MR. LINK AND MR. WOODBURY, AM I RIGHT?

MR. LINEHAN:  YES, THAT'S CORRECT.

THE COURT:  THAT BOTH PURCHASED THEIR SHARE, THE IDENTIFIED NUMBER OF SHARES WITHIN THE CLASS PERIOD, THAT NEITHER SOLD ANY OF THOSE SHARES WITHIN THE CLASS PERIOD AND THAT EFFECTIVELY WHAT THE -- AND THERE'S DIFFERENT AMOUNTS SPENT ON THAT BUT WHAT THE DIFFERING LOSS AMOUNTS REFLECT IS THAT MR. WOODBURY PURCHASED HIS SHARES AT A HIGHER -- A SMALLER NUMBER OF SHARES BUT PURCHASED THEM AS A SEEMINGLY SUBSTANTIALLY HIGHER PRICE PER SHARE THAN MR. LINK.  AM I UNDERSTANDING THE FIELD CORRECTLY IN THAT RESPECT?

MR. LINEHAN:  YES, YOUR HONOR.

THE COURT:  AND DO YOU AGREE?

MR. KIM:  THAT'S LARGELY CORRECT, YOUR HONOR.  I MEAN, THERE WERE PRICES AT WHICH MR. LINK HAD PURCHASED, I THINK HE PURCHASED SHARES AT THE HIGHEST PRICE AT OVER A HUNDRED DOLLARS A SHARE BUT HIS PURCHASES VARIED IN PRICE.

THE COURT:  OKAY.  SO I THINK MAYBE I WILL JUST OPEN

IT UP AND I WILL HEAR FROM MR. WOODBURY FIRST ON WHY GIVEN WE HAVE THREE DIFFERENT FACTORS AND ULTIMATELY WE ARE TRYING TO EVALUATE THE FINANCIAL INTEREST IN THIS LAWSUIT WHY IN YOUR VIEW LIFO LOSS IS THE PROPER METHOD TO USE --  SHOULD SORT OF TRUMP THE OTHER FACTORS.

MR. KIM:  YES.  I THINK TAKING A STEP BACK, BOTH ME AND MR. LINEHAN HAVE BEEN DOING LEAD PLAINTIFF WORK FOR PROBABLY 15, 20 YEARS, AND SORT OF THE LAX-OLSTEN FACTORS I DON'T THINK EVER WERE NECESSARILY ADOPTED BY THE NINTH CIRCUIT OR ANY CIRCUIT COURT, THEY WERE JUST RULES OF THUMB OR FACTORS THAT A COUPLE DISTRICT COURTS HAD CONSIDERED AND IT JUST SORT OF MORPHED INTO FACTORS THAT WOULD BE CONSIDERED.

BUT I THINK WHEN YOU HAVE A SITUATION WHERE YOU HAVE THE MOVANT WITH THE GREATEST LOSS, RIGHT, THAT'S THE FACTOR THAT THE COURTS LOOK AT.  I CITED A NUMBER OF NORTHERN DISTRICT CASES, I WOULD SAY THERE IS A COUPLE JUDGES IN THE NORTHERN DISTRICT THAT FOCUS ON SORT OF NET FUNDS AND NET SHARES WHICH MY COLLEAGUE HERE TO THE LEFT IS ADVOCATING FOR, BUT I THINK THE IDEA IS IF THERE WAS MAYBE PERHAPS A TIE OR PERHAPS THERE WAS A SMALL DELTA BETWEEN LOSS -- THE LOSSES, I'VE SEEN COURTS LOOK AT THE OTHER THREE FACTORS, BUT THE DELTA HERE IS 450,000 VERSUS 372,000 WHICH IS A SIGNIFICANT DELTA.  IN THAT SITUATION THERE WOULD BE NO NEED TO SORT OF LOOK AT THESE OTHER THREE FACTORS.

I KNOW THEY CITED A COUPLE OF CASES, THEY CITED THE GM

CASE WHICH I BELIEVE IS OUT OF THE EASTERN DISTRICT.  IN THAT CASE, THERE THE COURT APPLIED EQUAL WEIGHT TO ALL FOUR FACTORS, BUT I ALSO THINK IF YOU READ THAT DECISION, THERE WERE SOME ISSUES ABOUT THE VARIOUS LOSS CALCULATIONS THAT WERE SUBMITTED. SO THERE WAS OTHER FACTS SORT OF PLAYING INTO THAT.  BUT THERE ISN'T A NINTH CIRCUIT COURT THAT I BELIEVE MY COLLEAGUE HERE CITED.

AGAIN THE TRANSDIGM CASE, THAT'S ANOTHER CASE THAT LOOKED AT ALL FOUR FACTORS AND SORT OF WEIGHED THEM EQUALLY, BUT IN THAT CASE, THE PERSON WITH THE LARGEST LOSS HAD SOLD OUT ALL THEIR SHARES, WHICH WOULD QUESTION WHETHER THEY HAVE A DURA LOSS AT ALL.

SO I THINK EVERYONE WHO PRACTICES ON THE PLAINTIFF'S SIDE RECOGNIZE THAT LOSS AS SORT OF THE PROXY FOR LARGEST FINANCIAL INTEREST, IN FACT IN THEIR OPENING PAPERS THEY DON'T EVEN MENTION THE OTHER THREE LAX-OLSTEN FACTORS.  IN A SECTION OF THEIR BRIEF WHERE THEY SAY THEY HAVE THE LARGEST FINANCIAL INTEREST, THEY JUST INDICATE HIS CLIENT'S LOSS.

AND WE DIDN'T HIDE FROM THE LAX-OLSTEN FACTORS, WE CITED THOSE FACTORS IN OUR OPENING BRIEF, WE SAID LOOK THESE ARE THE FACTORS, WE CITED A NUMBER OF NORTHERN DISTRICT CALIFORNIA CASES AND ELSEWHERE THAT HAVE SAID THAT LOSS IS THE FACTOR THAT YOU LOOK AT AT THE LEAD PLAINTIFF STAGE TO DETERMINE LARGEST FINANCIAL INTEREST.

AND ONE OTHER POINT YOUR HONOR, ALTHOUGH THE NINTH CIRCUIT

HASN'T SAID WHICH ACCOUNTING METHODS TO USE IN ASSESSING LARGEST FINANCIAL INTEREST, I BELIEVE THE LANGUAGE IN CAVANAUGH SAYS SOMETHING TO THE EFFECT OF SOMETHING THAT'S CONSISTENTLY APPLIED AND RATIONAL, BUT IF YOU READ CAVANAUGH IT TALKS ABOUT LOSSES, IT DOESN'T TALK ABOUT NET SHARES.  AND IF YOU LOOK AT THE MERSHO CASE WHICH IS THE LATEST SORT OF NINTH CIRCUIT DECISION ON LEAD PLAINTIFF ISSUES, IT TALKS ABOUT DETERMINING THE FINANCIAL INTEREST, YOU LOOK AT DISTRICT COURTS LOOK TO SEE WHO HAS THE LARGEST LOSSES.

SO I THINK GIVEN ALL THESE FACTORS AND THE FACT THAT ALSO IN THIS CASE THERE WERE TWO CORRECTIVE DISCLOSURES, NOT ONE, AND THE CASES WHERE JUDGES HAVE FOUND NET SHARES TO BE DETERMINATIVE HAVE SAID THAT WHEN YOU HAVE MULTIPLE DISCLOSURES, WE HAVE AT LEAST TWO AND POTENTIALLY MORE, NET SHARES ISN'T NECESSARILY THE BEST PROXY TO DETERMINE LARGEST FINANCIAL INTEREST.

THE COURT:  LET ME -- I REALIZE I DO HAVE A QUESTION FOR YOU, MR. LINK'S COUNSEL, DO WE KNOW THE DATES ON WHICH MR. LINK PURCHASED THE STOCK AT ISSUE?

MR. LINEHAN:  WE DO.  THAT IS PROVIDED, IF YOU CAN JUST GIVE ME ONE MOMENT, BOTH IN HIS CERTIFICATION AND LOSS CHART WHICH ARE AT DOCKET NUMBER 19-2 IS A CERTIFICATION AND DOCKET NUMBER 19-3 IS THE LOSS CHART.

AND I JUST WANT TO HIGHLIGHT THAT ALL OF THOSE SHARES WERE PURCHASED BEFORE BOTH ALLEGED CORRECTIVE DISCLOSURES.

THE COURT:  OKAY.  AND THAT WAS MY QUESTION -- REALLY THAT WAS THE CORE QUESTION, BECAUSE I MEAN, I UNDERSTAND THE ISSUE OF LOSS BUT I THINK JUDGE KOH HAS WRITTEN ABOUT THIS TO SOME DEGREE, THE FINANCIAL INTEREST IN THE CASE IS IN SOME WAYS TIED TO WHAT IS LIKELY TO BE A RECOVERY IN THE CASE, CORRECT? AND SO IT IS LIKELY -- IN THIS SENSE, WE MAY HAVE TWO STAGES IN TERMS OF THINKING ABOUT WHAT IS THE DIFFERENCE BETWEEN -- WHAT IS THE FRAUD PREMIUM ON THE STOCK PRICE, CORRECT?  BUT PRESUMABLY THAT IS GOING TO BE, IF ALL OF THE SHARES AT ISSUE WERE PURCHASED PRIOR TO EITHER OF THE CORRECTIVE DISCLOSURES THEN PRESUMABLY THE SAME FRAUD PREMIUM IS GOING TO APPLY TO ALL OF THE SHARES CARRIED BETWEEN BOTH PARTIES, RIGHT, AND WE ARE NOT AT ANY ADDITIONAL LOSS THAT WAS SUFFERED BY MR. WOODBURY THAT WOULD BE ATTRIBUTED TO SOMETHING OTHER THAN THE FRAUD, ISN'T THAT HOW THE SORT OF MODELLING WOULD WORK IN THIS CASE?

MR. KIM:  IT COULD WORK LIKE THAT, BUT AS WE ALL AGREE, THERE WOULD BE AN AMENDED COMPLAINT, THESE DEVELOPMENTS ARE ONGOING.  I THINK THE NATURE OF THE ALLEGATION IS THE COMPANY HAD CONCEALED THAT THERE HAS BEEN A LONG RUNNING INVESTIGATION OF SOME FALSE CLAIM VIOLATIONS THAT BEGAN IN 2017, AND PERHAPS AS INVESTIGATION WAS RAMPING UP THAT MIGHT HAVE AFFECTED THE WAY THEY APPROACHED THEIR SALES AND PERHAPS THAT IF THERE WERE FURTHER STOCK PRICE DECLINES IN THE CLASS PERIOD AS A RESULT OF LOWER SALES THAT COULD HAVE BEEN A MATERIALIZATION OF THE RISK.

WHAT I'M SAYING IS WE DIDN'T ALLEGE IT BUT THERE IS THAT POSSIBILITY, AND I THINK TO SORT OF FORECLOSE THAT POSSIBILITY AND JUST SAYING AT THIS MOMENT THERE IS A CONSTANT FRAUD PREMIUM AND THAT WE NEED TO SORT OF TAKE THIS DEEP DIVE INTO LOSS CAUSATION, I DON'T THINK ANY OF THE CASES, AT LEAD PLAINTIFF, SAY THAT.  I THINK WHAT THEY SAY IS THIS DETERMINATION SHOULD BE MADE ON THE OUTSET.

WE UNDERSTAND THERE IS LOSS CAUSATION ISSUES THAT WILL BE CONSIDERED LATER ON BUT THIS IS SUPPOSED TO BE A VERY STRAIGHTFORWARD SORT OF SIMPLE PROCESS.  AND I THINK EVERYONE JUST FOCUSES ON LOSS, THAT'S WHAT THEY FOCUSED ON.  IF THEY ACTUALLY BELIEVED THAT NET SHARES WOULD CARRY THE DAY, THEY WOULD HAVE SAID THAT IN THEIR OPENING PAPERS.  OTHERWISE IF THE COURT WERE TO ALLOW LEAD PLAINTIFF MOVANTS TO CONSTANTLY SHIFT THE ARGUMENT ABOUT WHAT THE LARGEST FINANCIAL INTEREST IS, WE ARE JUST GOING TO -- IN EVERY CASE EVERYONE IS GOING TO BE FIGHTING OVER THIS.  AND I THINK THAT'S WHY WE HAVE CITED THOSE DECISIONS WHERE COURTS HAVE NOT CREDITED THOSE EFFORTS TO SORT OF CHANGE THE CALCULATION, CHANGE THE GOALPOST.

BECAUSE THERE'S ALWAYS CREATIVE ATTORNEYS ON EACH SIDE, AND YOU KNOW, PEOPLE CAN COME UP WITH ARGUMENTS.  BUT I THINK WHEN YOU FILE THE PAPERS, YOU MAKE REPRESENTATIONS IN THE PAPERS SAYING LOOK, THIS IS LARGEST FINANCIAL INTEREST IS BASED ON LOSS, THAT THE COURT SHOULD CREDIT THAT RATHER THAN LETTING PEOPLE SHIFT GEARS.

THE COURT:  LET ME JUST ASK, IS IT POSSIBLE UNDER THE FACTS HERE OR GENERALLY ARE THERE CIRCUMSTANCES WHERE THE -- YOU WOULD ACTUALLY CONCLUDE THAT THE FRAUD PREMIUM EFFECTIVELY ON THE STOCK PRICE INCREASES OVER TIME WITHIN THE CLASS PERIOD?

MR. KIM:  IT COULD.

THE COURT:  OR WOULD THAT REQUIRE -- WOULD THAT ONLY MAYBE OCCUR IN THE CONTEXT OF SORT OF WHERE THE CLAIM IS PREMISED ON AFFIRMATIVE MISREPRESENTATIONS AS OPPOSED TO A FAILURE TO DISCLOSE?

MR. KIM:  I MEAN I THINK THE FRAUD PREMIUM THEORETICALLY COULD INCREASE OVER TIME INSOFAR AS THERE'S BAD NEWS THAT IS CONCEALED, RIGHT, THAT MAINTAINS THE STATUS QUO THAN PERHAPS THE FRAUD PREMIUM OR AT LEAST WHAT COULD BE PROVED AS THE FRAUD PREMIUM COULD INCREASE OVER TIME.  AND IT COULD ALSO OBVIOUSLY GO THE OTHER WAY.  SO IT'S NOT OUT OF THE IMPOSSIBILITY.

AND THE OTHER THING I WOULD LIKE TO POINT OUT YOUR HONOR, I THINK ALL OF THIS LARGEST FINANCIAL INTEREST IS A PROXY, RIGHT, THAT'S A PROXY BECAUSE CONGRESS BELIEVED THAT THE INVESTOR WITH THE LARGEST FINANCIAL INTEREST WOULD BE MOTIVATED AND WOULD BE ABLE TO OVERSEE THE CASE.  AND I UNDERSTAND THAT MY COLLEAGUE HERE CITED SOME CASES AND SAID HEY, YOU KNOW, THE LAW IS PRETTY CLEAR THAT IT'S A PRETTY LOW BAR.  I MEAN BASICALLY AS LONG AS YOU DON'T HAVE A FELONY CONVICTION AND A PULSE, YOU ARE GOING TO BE AN ADEQUATE LEAD PLAINTIFF.

OUR POINT BASICALLY IS THAT SECURITIES LITIGATION IS STRESSFUL.  I MEAN, IF YOU SAT IN A ROOM PREPARING A WITNESS FOR A CLASS CERT DEPOSITION WITH MILLIONS OF DOLLARS ON THE LINE, THAT'S A STRESSFUL SITUATION.  AND THERE HASN'T BEEN ANY EVIDENTIARY PROOF FROM MR. LINK AS TO HIS MENTAL FITNESS. THERE WASN'T A DECLARATION, THERE WASN'T ANYTHING, ANY SHOWING TO THE COURT REFUTING WHAT HE HAD SAID IN HIS PLEADING.  IN HIS PLEADING HE SAID HE HAD A MENTAL EPISODE.  I DON'T KNOW WHAT THAT MEANS.

THE COURT:  YEAH, I'M RELUCTANT TO RELY ON THAT CRUMB TO SORT OF DEEM HIM UNABLE TO SERVE AS A LEAD PLAINTIFF IN THIS CASE, AND PRESUMABLY -- CERTAINLY I'VE SEEN INSTANCES WHERE THERE'S MUCH MORE SUBSTANTIAL EVIDENCE SUBMITTED BY OTHER ATTORNEYS SEEK APPOINTMENT AS LEAD COUNSEL, LEAD PLAINTIFF.  SO UNDER THOSE CIRCUMSTANCES, I'M NOT SURE THAT A SINGLE -- A REPRESENTATION MADE IN A LAWSUIT IN 2019 WOULD BE SUFFICIENT TO BRING -- TO GIVE ME PAUSE ON THAT FRONT.

NOW OF COURSE IF FURTHER EVIDENCE DEVELOPS OVER THE COURSE OF THE CASE, THERE'S ALWAYS POSSIBILITY FOR SUBSTITUTION OR FOR ADDRESSING THAT AT THAT TIME.

MR. KIM:  I UNDERSTAND THAT.  I JUST RAISE THAT, YOUR HONOR, BECAUSE IT SEEMS LIKE IT'S A CLOSE CALL HERE, RIGHT.  YOU KNOW, THE NUMBERS ARE FAIRLY CLOSE AND I'M NOT SAYING THAT THOSE FACTS ARE DETERMINATIVE.  ALSO THE ALLEGATIONS ABOUT SORT OF IF TRUE, SORT OF THE ALLEGATIONS --

MY POINT IS WHEN IT'S A CLOSE CALL, I THINK THESE OTHER FACTORS ARE RELEVANT.  AND IF THE COURT IS INCLINED TO FIND THAT THE NET SHARES RULE THE DAY HERE, I RESPECTFULLY DISAGREE WITH THAT BUT I THINK GIVEN HOW CLOSE THE LOSSES ARE AND I'VE WORKED WITH THE GLANCY FIRM BEFORE, THIS MIGHT BE A SITUATION WHERE IT MAKES SENSE TO HAVE CO-LEAD PLAINTIFFS AND CO-LEAD COUNSEL.  I HAVEN'T BROACHED THAT TOPIC WITH MR. LINEHAN BUT WE WORKED WITH HIS FIRM IN THE PAST AND CURRENTLY IN THIS COURT AND OTHERS SO I WOULD SUGGEST THAT AS WELL, YOUR HONOR.

THE COURT:  LET ME ASK MR. LINEHAN, GIVEN THE APPROACH THAT WAS OFFERED IN YOUR INITIAL MOVING PAPERS TO USE TOTAL LOSS AS THE MEASURE OF THE LARGEST FINANCIAL INTEREST AND GIVEN THE POINTS THAT HAVE BEEN RAISED ABOUT THE DIFFICULTY OF MAKING A PREDICTION AT THIS POINT ABOUT WHAT THE DAMAGES MODELING IS GOING TO LOOK LIKE DOWN THE ROAD AND WHETHER THERE'S GOING TO BE A CONSTANT FRAUD PREMIUM OR WHETHER THERE'S GOING TO BE SOME STEPPING UP OR DOWN WITH THAT WITHIN THE CLASS PERIOD, WHY ISN'T THAT THE CASE THAT THAT SHOULD BE ENOUGH TO SAY, AS MR. KIM IS SUGGESTING, THAT WE JUST SHOULD RUN WITH THE EASY NUMBER, WHICH IS TOTAL LOSS?

MR. LINEHAN:  SO IN OUR INITIAL PAPERS WE NEVER SAID THAT COURTS DON'T LOOK TO THE LAX FACTORS, I THINK AS MR. KIM POINTED OUT, COURTS DO LOOK TO THE LAX FACTORS.  WE HIGHLIGHTED IN OUR FINANCIAL INTEREST ANALYSIS SUBMITTED WITH OUR INITIAL MOTION, WE HAVE THERE THE LOSS PRESENT, THE GROSS SHARES

PURCHASED PRESENT, THE RETAINED SHARES, 18,000 RETAINED SHARES PRESENT AND THERE'S A LINE THAT WOULD BE THE NET EXPENDITURE. SO WE PROVIDE -- HIGHLIGHTED ALL THAT INFORMATION.  WE DID PUT THE AMOUNT OF THE LOSS IN THE BRIEF ITSELF.  TO BE MORE FULSOME, WE COULD HAVE INCLUDED EVERY FACTOR THAT THE COURTS CONSIDER, MAYBE THAT'S JUST AN OVERSIGHT, WE WILL DO GOING FORWARD, BUT -- AND TYPICALLY WHO HAS THE LARGEST FINANCIAL INTEREST IS NOT CONTESTED BECAUSE TYPICALLY YOU DON'T HAVE SITUATIONS WHERE SOMEBODY WINS ON MULTIPLE FACTORS.  HAD I KNOWN THAT WAS GOING TO BE THE CASE I MIGHT HAVE PRESENTED ALL THE FACTORS MORE CLEARLY IN THE BRIEF ITSELF.

BUT HERE IT'S A VERY STRAIGHTFORWARD CASE OF EVERYONE BOUGHT BEFORE THE TWO ALLEGED CORRECTIVE DISCLOSURES AND HELD THROUGH THOSE CORRECTIVE DISCLOSURES.

COURTS IN THIS CIRCUIT, COURTS IN THE NORTHERN DISTRICT INDICATE THAT THAT TYPE OF SITUATION YOU CAN ASSUME A CONSISTENT FRAUD PREMIUM, AND SO THEREFORE THE PERSON THAT PURCHASED MORE SHARES WOULD HAVE A LARGER LOSS.

NOW THIS IDEA OF THEORETICALLY COULD IT BE POSSIBLE THAT WITHOUT CORRECTIVE DISCLOSURES, THERE MIGHT BE FLUCTUATIONS IN THE FRAUD PREMIUM OVER THE COURSE OF THE CLASS PERIOD, FOR PURPOSES OF SELECTING LEAD PLAINTIFF, I THINK THE ASSUMPTION IS NO, BUT EVEN IF THAT THEORETICALLY WERE TO BE THE CASE, IT CAN'T BE ASSUMED THAT MR. WOODBURY PURCHASED AT THE TIME OF HIGHER FRAUD PREMIUM THAN MR. LINK OR MR. LINK PURCHASED AT THE

TIME OF HIGHER FRAUD PREMIUM.

THE COURT:  WELL HE DID PURCHASE AT A SPECIAL HIGHER PRICE, SO ONE MIGHT SURMISE FROM THAT FOR CURRENT PURPOSES THAT THE FRAUD PREMIUM WAS HIGHER.

MR. LINEHAN:  I THINK THAT'S ACTUALLY A REASON WHY LOOKING TO LOSS IS PARTICULARLY UNHELPFUL.  THE MANY THINGS, THE COMPANY'S STOCK PRICE, MARKET CONDITIONS, MICRO-ECONOMIC FACTORS, THINGS EARNESTLY GOING ON WITH THE BUSINESS AND THE FRAUD PREMIUM.  THE FACT THAT THEY PURCHASED A SUBSTANTIALLY HIGHER PRICE AND THAT THAT PRICE CAME DOWN ABSENT CORRECTIVE DISCLOSURES INDICATES THAT MOST OF THEIR LOSS IS ACTUALLY PROBABLY, OR A GOOD PORTION OF THEIR LOSS IS ACTUALLY DUE TO FACTORS NOT TIED TO THE FRAUD, TIED TO JUST MARKET CONDITIONS, TIED TO THE COMPANY'S RESULTS APART FROM THE FRAUD.

AND SO THE SAFEST BET WOULD BE THAT WHOEVER PURCHASED MORE SHARES AND HELD THEM THROUGH THE DISCLOSURES OF THE FRAUD, ALL OF THE THINGS BEING EQUAL, IS MORE LIKELY TO HAVE THE LARGEST FINANCIAL INTEREST.

THE COURT:  OKAY.  IS THERE -- I WILL START WITH MR. KIM, IS THERE ANYTHING ELSE YOU WOULD LIKE TO OFFER ON THE MOTION.

MR. KIM:  YEAH, I WOULD JUST LIKE TO SAY I'M LOOKING AT THEIR OPENING BRIEF AND IT SAYS THAT SUFFERED FINANCIAL HARM.  IT SAYS -- THIS IS THE FIRST SENTENCE, LINK PURCHASED SEMLER SCIENTIFIC SECURITIES DURING THE CLASS PERIOD AT PRICES

IMPACTED BY DEFENDANT'S MISSTATEMENT AND OMISSIONS AND AS A RESULT SUFFERED FINANCIAL HARM OF APPROXIMATELY 372,000.

AND IT GOES ON AND SAYS -- IT'S UNDER THE HEADING, HE'S GOT THE LARGEST FINANCIAL INTEREST.  IF YOU LOOK AT THEIR LOSS CHART WHICH IS DOCUMENT NUMBER 19-3, IT'S JUST A LISTING OF THE SHARES, THERE'S NO COLUMN ABOUT NET SHARES EXTENDED, NET FUNDS EXTENDED.  SO I MEAN I THINK WE ALL WENT INTO THE LEAD PLAINTIFF MOTIONS WITH ONE SET OF RULES THAT EVERYONE SORT OF AGREES ON IS WHAT'S GOING TO BE THE LARGEST FINANCIAL INTEREST IN THIS CASE.  THE MOTIONS WERE FILED, THEY FOUND OUT THAT THEY DIDN'T HAVE THE LARGEST LOSS BUT COULD WIN ON THESE OTHER FACTORS OR THOUGHT THEY COULD WIN ON THESE OTHER FACTORS AND THEY CHANGED THE GOALPOST.

AND THESE ARE TOUGH QUESTIONS --

THE COURT:  THEY DIDN'T KNOW WHICH OF THE GOALPOSTS WERE GOING TO BE MOST RELEVANT TO THE ANALYSIS, I THINK IT'S FAIR TO SAY.  AND THAT'S OFTEN THE WAY THIS HAPPENS.

MR. KIM:  THEY WOULD HAVE SAID FOUR FACTORS, RIGHT, WHY GET RID OF THE THREE?

I'M NOT GOING TO BELABOR THAT POINT, YOUR HONOR, I MAKE THAT POINT BECAUSE AS WITH THE OTHER COURTS THAT HAVE SORT OF REJECTED THESE ATTEMPTS IS THAT LOOK, THESE ARE COMPLICATED QUESTIONS, RIGHT, AND THESE ARE ALL QUESTIONS THAT AN EXPERT IS GOING TO DEAL WITH AT LATER STAGES IN THE CASE.  BUT WHEN YOU ARE AT THE BEGINNING OF THE CASE AND PEOPLE AGREE THAT LOSS IS

THE MOST DETERMINATIVE, THE DELTA HERE BETWEEN THE LOSSES ARE PRETTY LARGE, THIS ISN'T A $5,000, $10,000 DIFFERENCE WHERE YOU WOULD LOOK AT THE OTHER FACTORS TO PERHAPS BREAK A TIE.

THE COURT:  I MEAN, THE CONCERN THAT YOUR COLLEAGUE HAS RAISED IS THAT THAT MAY SUGGEST THAT IT'S HARD TO KNOW WHICH WAY THAT RUNS BECAUSE IT COULD SUGGEST THAT THERE WAS -- FOR REASONS UNRELATED TO FRAUD, THERE WAS A MARKET RUN OF OPTIMISM ABOUT THE COMPANY AND THAT THAT WAS -- THAT A LOT OF LOSS THAT YOUR CLIENT SUFFERED WAS A RESULT OF THAT, AS OPPOSED TO BEING A RESULT OF THE FRAUD THAT'S AT ISSUE IN THIS CASE.

I MEAN, THAT'S SORT OF THE POINT THAT IS BEING MADE, AND THAT GIVEN THE SUBSTANTIAL DIFFERENCE IN STOCK PRICE AT ISSUE BETWEEN THE TWO PARTIES, IT MIGHT BE THE CASE THAT THAT SUGGESTS THAT SUBSTANTIAL PORTION OF THAT LOSS IS UNRELATED TO THE FRAUD THAT'S BEING ALLEGED.

MR. KIM:  WELL I MEAN, I THINK THE STOCK PRICE DID FLUCTUATE.  IT COULD BE THAT WITHOUT THE DISCLOSURE OF THIS INFORMATION, THAT THE INVESTORS BELIEVE THAT THE STATUS QUO WAS MAINTAINED.  THE STATUS QUO WAS MAINTAINED, IT'S A GROWING COMPANY AND THEY ARE CONTINUING TO SELL.

SO THAT COULD BE A REASON WHY THE FRAUD PREMIUM COULD INCREASE, IT COULD DECREASE OVER TIME AS WELL IF THERE WERE OTHER CORRECTIVE INFORMATION THAT WERE TO BE RELEASED OR MATERIALIZED BEFORE THE END OF THE CLASS PERIOD.  SO I DON'T THINK IT'S ONE OR THE OTHER, I THINK IT COULD BE BOTH.  I THINK

THAT'S WHY LOSS IS A PRETTY GOOD PROXY.

IF THERE WAS A SINGLE DISCLOSURE CASE, RIGHT, AND THERE WASN'T THESE POTENTIAL ISSUES, I MEAN THERE'S ALREADY TWO DISCLOSURES, THERE COULD BE MORE, I THINK GIVEN THAT, THAT WOULD BE ANOTHER REASON THAT WOULD MILITATE AGAINST USING NET SHARES AS BEING OUTCOME-DETERMINATIVE IN THIS SITUATION.

THE COURT:  ALL RIGHT.

MR. LINEHAN, IS THERE ANYTHING ELSE YOU WANTED TO OFFER ON THE MOTION?

MR. LINEHAN:  I GUESS IF THERE ARE MORE CORRECTIVE DISCLOSURES BOTH OUR CLIENTS HELD, SO I WOULD STILL ASSUME THAT MY CLIENT WOULD HAVE LARGE POTENTIAL RECOVERY HAVING HELD MORE SHARES OVER THOSE --

THE COURT:  UNLESS THERE'S SOMETHING EARLY -- UNLESS THERE'S SOME DISCLOSURE THAT'S NOT ALLEGED AT THIS POINT BUT THAT THAT WOULD HAVE TO BE EARLIER IN A WAY THAT IMPACTS WHETHER ALL THE SHARES WERE PURCHASED PRIOR TO ANY CORRECTIVE DISCLOSURE.

MR. LINEHAN:  TO THAT I WOULD SAY COUNSEL FOR MR. WOODBURY DRAFTED THIS COMPLAINT, DID NOT IDENTIFY ANY EARLIER DISCLOSURES.  I'M OBJECT AWARE OF ANY AND HE HASN'T IDENTIFIED ANY OTHER POTENTIAL DISCLOSURES HERE OTHER THAN TO SUGGEST THERE MAY BE SOME.

THE COURT:  OKAY.

IS THERE ANYTHING MR. SHAPIRO OR MR. BARKER THAT YOU

WANTED TO OFFER ON THE MOTION TODAY?

MR. SHAPIRO:  THERE'S SO MUCH WE WOULD LIKE TO SAY BUT I THINK GOING TO GOING BACK TO ENRON, THE APPROPRIATE TIME FOR US TO WEIGH IN ON PREDOMINANCE AND TYPICALITY IS IN RESPONSE TO MOTION FOR CLASS CERTIFICATION IF PLAINTIFF EVER FILES.  SO THANK YOU FOR THE OPPORTUNITY, AND I THINK ON THAT BASIS, NO.

THE COURT:  OKAY.  I AM GOING TO TAKE THE MOTION UNDER SUBMISSION AND I WILL AIM TO GET A DECISION OUT FORTHWITH.

OBVIOUSLY MR. KIM HAS RAISED THE POSSIBILITY OF WORKING TOGETHER, SO IT'S CERTAINLY SOMETHING YOU COULD DISCUSS WHILE I'M DECIDING THE MOTION, AND SO I WILL NOT DECIDE THE ISSUE TODAY BUT I WILL AIM TO GET A DECISION OUT FORTHWITH SO THAT WE CAN MOVE FORWARD IN THIS CASE.

MR. LINEHAN:  THANK YOU VERY MUCH.

MR. KIM:  THANK YOU, YOUR HONOR.

THE COURT:  ANYTHING ELSE WE NEED TO DO THIS MORNING?

MR. LINEHAN:  NO.  THANK YOU, YOUR HONOR.

MR. SHAPIRO:  THANK YOU, JUDGE.

(PROCEEDINGS CONCLUDED AT 10:37 A.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____

SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185

DATED:  12/8/2025